The next case for argument is 16-1-0-0-1. This is an appeal from a decision of the Patent Trial and Appeal Board rejecting as obvious all pending claims of the applicant's patent application directed to the treatment or prevention of the flu in humans by administering a particular compound known as Zanamivir by oral inhalation alone. So that's the inventive concept is strictly the administration of this drug orally. By oral inhalation alone. Yes, Your Honor. This court should reverse the board's decision because there were two primary errors that were committed. The first is that the board failed to present a prima facie case of obviousness because it based its obviousness determination on three factual findings that are not supported by substantial evidence. And second, even if the board had presented a prima facie case of obviousness, the applicant submitted evidence of unexpected results that were sufficient to rebut the prima facie showing. More specifically on that point, the board erred as a matter of law in requiring direct comparative evidence of unexpected results and in failing to give the evidence of secondary considerations due weight. So turning to the first error of failing to present a prima facie case supported by substantial evidence, there are three factual findings that are unsupported by substantial evidence. The three factual findings are, first, that Van Etschtein 2 teaches or suggests administering compounds for treating or preventing the flu by oral inhalation alone. The second factual finding error is that the compounds disclosed in Van Etschtein 2 were enabling for teaching oral inhalation of Zanamivir. Firstly, Van Etschtein 2 does refer to well-known delivery methods and it includes oral, right? Your Honor, Van Etschtein 2 first specifically excludes Zanamivir from its compound and we respectfully submit that it does not teach or reasonably suggest oral inhalation. On three pages of Van Etschtein 2, at pages A287 through A290 of the appendix, there is a first general introductory paragraph that describes what the modes of administration of the compounds disclosed in that reference are. And that general paragraph lists a variety of modes of administration and among them is suitable oral administration modes. There are then corresponding paragraphs that follow that initial paragraph that specifically describe what each of those modes, how they can be administered. And for oral administration, it specifically does not say inhalation. The word inhalation is never used in the paragraph that describes the appropriate modes of oral inhalation. Instead, what it says is that oral administration can be capsules, caches, tablets, or oral liquid preparations that include dry products that are mixed with a liquid. Dry powders are also listed in that description. And the word inhalation or inhaled is only used in a subsequent section of the paragraphs on the modes of administration describing intranasal administration. Can I just skip over to kind of a related but different subject, which is that the examiner relied on three additional references, Smith, Everett, and Ganderton. And the board kind of embraced that, albeit in possibly conclusory fashion. The Patent Office, arguing here, relies on those. It seems to me that those pieces of prior art very clearly disclose that the flu infects the lower respiratory tract. Everett discloses oral inhalation is effective for delivering drugs to the lower respiratory tract, i.e. lungs. And the third reference suggests treating flu, a lower respiratory condition, by oral inhalation. So if you're left with those references, why don't those references, leaving aside what is contributed by the von Itzstein 1 and 2, provide sufficient basis for a prima facie case? Yes. Ganderton and Everard, two of the references that you just referenced, do not disclose at all the administration of Zanimivir for treating the flu. Ganderton just discloses— Well, I mean, we're not dealing with an anticipation here. We're dealing with an obviousness, so obviously not one particular reference is going to describe everything in this. But the inventive concept is using oral inhalation for treating lower respiratory condition, right? Yes, Your Honor. So what's missing in these references that would suggest that that's already in the prior art? Yes. The Hayden Declaration that was submitted, which is unrebutted evidence, explains that it was known at the time prior to the effective filing date of the application that the flu virus replicates in the upper respiratory tract. And because of that, all of the known methods for administering Zanimivir up to that point in time were by nasal inhalation alone. There are references in the record that show that. Well, that may be what his affidavit says, but doesn't the Smith reference disclose that while flu primarily infects the upper respiratory tract, it also infects the lower respiratory tract? So we've got—notwithstanding what the expert may have said, don't the references clearly disclose that it was known in the art that flu can affect the lower respiratory tract? And then that leads you to the other references, which deal with oral inhalers, to deal with those conditions in the lower respiratory tract, right? Smith does disclose that, and what they concluded in Smith was that the upper respiratory tract infection is much greater than the lower respiratory tract infection, and that there's a much greater production or replication of the virus in the nasal tissue, which is in the upper respiratory tract, than the lower respiratory tract by a scale of 10 to 100 times more. That point is important because Dr. Hayden's declaration and other references in the record show that it was known that the flu virus could end up in the lungs, but that it's the site of replication, which was the concern because the compound Zanimivir needs to be administered to the site of replication of the virus, which was believed to be the upper respiratory tract, which even Smith supports that in its disclosure of saying that much greater production of the virus occurs in the nasal tissue by 10 to 100 times more. There are other references, such as the Ryan reference, which is in the Appendix A-2098, which was a 1994 reference just before the effective filing date of the application that explained that all experiments to date administering Zanimivir were shown to be effective only when the compound was administered intranasally. And there's another von Itztein publication that's in the appendix, von Itztein 1993 reference, that specifically said that they were focusing on nasal inhalation in administering the drug because it was believed that that's where the virus replicated, was in the nasal passages. And so while the flu could be in the lungs, and people of owner's schooling understood that, they understood that it was replicating in the upper respiratory tract, and that's where the site of administration of the compound needed to be. And there actually are no references in the record dated before the effective filing date of the application that disclose any effective administration of Zanimivir other than by nasal inhalation alone. The Ryan reference, again, they attempted there to do it by oral administration, something you swallow, or by injection, and concluded that neither of those methods were effective, and that only intranasal administration was effective, again, because they believed that's where the virus was replicating. I take it that the record reflects that, correct me if this is not right, that the likelihood of infection in the lower respiratory tract is greater among infants than adults, is that right? That was also in the Smith reference, Your Honor, and actually what the Smith reference discloses in its introduction, it explains that in young children, influenza is a common respiratory infection, and sometimes it's complicated with bronchitis, poop, or pneumonia, and this indicates a greater susceptibility of lower respiratory tract being involved in young children, but it then importantly goes on to say, but is this true? And if so, what are the reasons? That's what Smith was trying to answer that question, and Smith actually was not able to answer that question. In the conclusion of the paper, they explain that they studied, to try to answer that question, they did a study on ferrets, and the ferret study on neonatal ferrets does not reflect the human situation, is what they concluded, and that human infant bronchitis involvement may not be more susceptible to infection than corresponding adult tissues. They simply were not able to answer the question, and that conclusion is on A-2089. Turning back to the factual errors, the board also found that the compounds disclosed in von Etzstein 2 were enabling for teaching oral inhalation of Xanimibir, that is the second factual error, not supported by substantial evidence, because there's no dispute that von Etzstein 2 first specifically excludes Xanimibir. And then second, the compound that the patent office is relying on there in von Etzstein 2 was actually found in the Chandler reference at A-2117 of the appendix. That compound was directly compared to Xanimibir, and it was found that Xanimibir is up to 2400 times more active in vitro than the compound of von Etzstein 2. So there are significant structural and functional differences between Xanimibir and the compound of von Etzstein 2, and given what the understanding of persons of ordinary skill in the art were at the time, the board speculated that the compound of von Etzstein 2 would teach treatment of influenza using what they called a very closely related compound, but that compound, by the record, shows that it was not nearly as effective as Xanimibir and was not enabling for treatment of it. What was your third factual error? The third factual error is that the evidence shows that there wasn't a reasonable expectation of success for administering Xanimibir by oral inhalation alone, and we rely heavily on the Hayden declaration for that, where that was his testimony. He explained that the testimony was unrebutted, and the board instead really substituted its own interpretation of the underlying studies that Dr. Hayden was relying on rather than crediting his testimony on that. And the second primary error was that even if the board had presented a prima facie case of obviousness, the applicants submitted sufficient evidence of unexpected results that was sufficient to rebut the prima facie showing. I see I'm into my rebuttal time. You're into your rebuttal, and we'll stick with the government. May it please the court. At bottom, Ephthalmophilus' argument comes down to this idea that because no one would have known that oral inhalation would have worked with certainty, that their invention is not obvious for that reason. But that is not the standard. The standard is a reasonable expectation of success, and that reasonable expectation of success does not require complete certainty. It only requires a degree of predictability. Granted, a degree of predictability encompasses the expectation that the prior art elements could be combined as well as the expectation that the combination would have worked. Both of those expectations. Okay, let's get to the prior art references that you're using to combine. Here it was well known that Zinamivir and its 4-methyl homolog were useful in treating influenza, that these are well-known neuraminidase inhibitors and their mechanism of action was well documented. Furthermore, von Itstein 1 teaches that delivery of Zinamivir to the upper respiratory tract treats influenza, and that is exactly what von 2 was trying to achieve. There is no evidence in the record that Zinamivir wouldn't have worked in von 2's method, nor is there any evidence in the record that oral inhalation would not have worked. This is not a case where, as Ophthalmophilus argues, that there are so many... I guess I'm not following your argument. You don't, the other side doesn't have to disprove, or we're not talking about a showing that it didn't work. Where's your motivation to, what are you combining and where is the motivation to combine those references? We are combining the use of the compounds in Zinamivir, which is taught by von Itstein 1, and with oral inhalation, which is established by the fact that von Itstein 2 discloses inhalation. But in addition to that, we have all of these other references, Everard and Ganderton, which establish that inhalation to treat respiratory conditions is rooted in antiquity. It is well known that inhalation can be used to treat respiratory disorders. It only makes sense then to treat influenza by providing the drug to where the virus acts, to in the respiratory tract. There's only two ways of doing that, and that is well known in the art. Yeah, but your friend tells us that the assumption was that all of this was in the upper respiratory tract treated by nasal inhalation, and that there was no oral inhalation. Nobody knew we were treating the lower respiratory tract. There was a need to do it in connection with this drug and this virus. They make that argument to attack the primophagia case, but what do they rely on in making that argument? Well, you need to rely on something, because you've got to come up with references that show that it at least would have been obvious for someone to take this information and this information in the prior art and combine them. So again, what are those references, and what do they say about lower respiratory tract and the use of this drug? One of the references is a Smith and Sweet reference that Ephthalmopoulos himself introduced into the prosecution and has relied on throughout the prosecution and before this court. In Smith and Sweet, Ephthalmopoulos argues that Smith and Sweet establishes the state of the art, that it explains the motivations of a person of ordinary skill in the art. But as the examiner explained, Smith and Sweet doesn't help their case, because yes, Smith and Sweet does teach that influenza was found primarily in the upper respiratory tract for adults, but it was also known to be found in the lower respiratory tract. Smith and Sweet teaches that the presence of the virus in the lower respiratory tract depended on the virulence of the strain. The more virulent the strain, the more likely that you would have found it in the lower respiratory tract. Smith and Sweet teaches that in young neonate ferrets, that they were more likely to have a lower respiratory tract infection of the virus. Yes, it's true, as Ephthalmopoulos' counsel pointed out, that initially in the Smith and Sweet reference, the reference postulates whether or not this is a true hypothesis, but it goes on to prove that hypothesis later in the reference. Where are you reading from? It answers it with regards to where the replication is taking place. We can look at A2087. In a second column, with regards to the conclusions from the ferret study, lower respiratory tract, after the number four there in that first full paragraph, it goes on to say, The reduced LRT infection was due predominantly to a lower capacity of the bronchial epithelium than of nasal turbinate epithelium to replicate the virus. The capacity of a strain to attack the lower respiratory tract was determined by its ability to replicate in the bronchial epithelium. At A2082, it goes on to explain, in the first column, in the first full paragraph, actually the beginning of the second full paragraph, it says replication in bronchial organ cultures reflects to a considerable extent Sorry, you're at A2082. by the different strains that they tested. So this idea that it only created this hypothesis but didn't come to the conclusion is not exactly right. It is in the Smith and Sweet reference. And to the extent that there were uncertainties, the uncertainties were as to where the primary place of infection was, whether it was in the upper respiratory tract or whether it was in the lower respiratory tract, where the site of acquisition of the virus was. But that goes to efficacy. That goes to explain which route was more effective. To find a reasonable expectation of success, the office didn't need to find that the most effective route was the only one that was obvious. It could have been less effective and it would have been just as obvious. The routes of administration are all at the command of a person of ordinary skill in the art. They have their advantages and disadvantages to each route of administration and they are all well known. The fact that they chose one over the other could be for varying reasons that have nothing to do with efficacy. It could be due to all sorts of factors, like patient compliance, like it was cleaner to insert through your mouth as opposed to your nose, it was cheaper to manufacture. There are lots of reasons and all of this is understood by a person of skill in the art. They are known to have this information because all of this information is well recognized in the art as explained by von Etzstein 2 and also by the fact that inhalation was well understood. The other problem I think for ephthymopolis is that it creates this false binary choice between oral and nasal and argues that if you only administer it orally, it only goes to your nose. If you administer it intranasally, it only goes to your nose. If you give it orally, it only goes to your lower respiratory tract. In order to support that choice, which isn't exactly right because the respiratory tract is one continuous organ, they redefine what lower respiratory tract means. In their brief at page 28, they define the lower respiratory tract as the throat, which is your pharynx, the bronchi, and lungs. They define your upper respiratory tract as just being your nasal passages. Even Hayden does not agree with that definition. Hayden explains that your lower respiratory tract starts from your trachea and down. The reason I think that this is important is because in the Hayden declaration at paragraph 2, it says, it is well known that influenza replicated in the upper respiratory tract and could be recovered from nasal and pharyngeal secretion samples. That tells you that the virus replicates in your nose and in your throat. That in itself is evidence of why a person of ordinary skill in the art would have administered it orally, because oral administration goes to your throat. That is supported by all of the references that Dr. Hayden cites. With regards to unexpected results, the law of unexpected results is clear. You have to meet certain requirements. You have to show that you have compared to the closest prior art. You have to show that the results that you get are commensurate in scope with the claims. You also have to establish this with hard evidence, not just conclusory statements in an affidavit. The studies that Dr. Hayden cites is lacking in at least one, if not two, of these two requirements. That is why the board in balance found that it wasn't sufficient to overcome the prima facie case of obviousness here. I can go through the studies if the court would like. If there are no further questions, I'll see you the rest of my time. Thank you. Thank you. The board's findings, and as articulated by counsel just now, impermissibly rely on hindsight to come to the conclusion. The patent office picked and chose among out-of-context statements in Von Itstein 2 to reach a conclusion that there was a prima facie case of obviousness in contravention of Dr. Hayden's testimony. It's undisputed that no one had administered Xanamivir by oral inhalation before the applicant. The only support that the government tries to rely on for oral inhalation are the teachings in Von Itstein 2 itself that I discussed earlier that do not disclose or reasonably suggest oral inhalation. Prior to the effective filing date of the application, the only evidence in the record as to the administration of Xanamivir was that it was by intranasal administration. No reference shows or suggests that the references should or could be combined successfully. And to clarify my comments earlier on Everard and Ganderton, neither one of those references discuss flu medications. They only discuss general delivery of aerosols and where the medication would end up, but they are not specific to the flu and certainly not to Xanamivir. There's nothing in the record showing that the knowledge of persons of ordinary skill in the art would have led them to administer Xanamivir by oral inhalation alone with a reasonable expectation that would be effective. One of the most direct statements of that is actually in the Kaiser reference that Dr. Hayden relies on in his declaration, which is dated in 1999, five years after the effective filing date of the application, where the reference states that there's still uncertainty that existed about the main site of replication, whether it was the upper respiratory tract or the lower respiratory tract. And the Kaiser study specifically says that as a result, that study was being done to compare intranasal inhalation to oral inhalation. So even as of that date, the Kaiser reference evidences that there was uncertainty about the site of replication. Dr. Hayden's testimony evidences that what a person of ordinary skill in the art knew and why the effectiveness of administration of oral administration only was an unexpected result. There is no evidence rebutting that declaration. Instead, there's the board's reinterpretation of the underlying studies that are in the declaration, rather than considering Dr. Hayden's actual testimony about what those studies meant to a person of ordinary skill in the art. And this was an error. Unless there's any other questions. Thank you. Thank you. We thank both counsel. The case is submitted.